OPINION OF THE COURT
Louis I. Kaplan, J.
Plaintiff, a longshoreman, brought this action for personal injuries allegedly resulting from negligence and unseaworthiness against the owners of a ship on which he was working when injured in 1970. Defendants then impleaded plaintiff’s employer. In 1973, plaintiff successfully moved to increase the ad damnum from $100,000 to a quarter of a million dollars on each cause of action, and now seeks to further amend to $1,000,000 based on five annual increases in the longshoremen’s minimum wage since 1973. The shipowners and the employer oppose the motion on the ground that plaintiff has shown no greater injury than that originally claimed. The employer further contends that, had plaintiff done so, he could not amend as it would prejudice all defendants to permit an amendment at this point absent a medical affidavit and an affidavit of merits.
The cases cited by the employer in support of this position deal with instances where a plaintiff after several years moved to amend the bill of particulars to allege new injuries, and to increase the ad damnum without such supporting affidavits, or to do so after trial. (Natale v Pepsi-Cola Co., 7 AD2d 282, 285; Handschu v Weltz, 13 AD2d 679; Koi v P. S. & M. Catering Corp., 15 AD2d 775; Ferrari v Paramount Plumbing & Heating Co., 20 AD2d 878; Jimenez v Seickel & Sons, 22 AD2d 643; Maasch v Corning Co., 29 AD2d 774; London v Moore, 32 AD2d 543; Galarza v Alcoa S. S. Co., 34 AD2d 907; Osborne v Miller, 38 AD2d 298, 300; Pugh v Hoffman, 51 AD2d 950.) This, however, is not the situation here. Plaintiff claims no new injuries. The basis for his motion is that, had he not been disabled by the accident, plaintiff would have been paid a higher wage after 1973 than longshoremen earned at the time of the last amendment. There has been no showing that defendants or third-party defendant would be prejudiced by such an amendment, and they do not claim they were unaware of the minimum wage increases. The real basis for their opposition is that granting the motion would let "the jury hear mention of a million dollars”. The only remaining question is, therefore, whether, in a court of general jurisdic *625 tion, a request for a large sum of money would, if granted, be sufficiently prejudicial to warrant denial of a motion to increase the amount demanded in the ad damnum.
The purpose of the ad damnum clause in a complaint is to comply with the requirements of due process by giving an adverse party notice of the claim made against him and the nature of the relief requested; and CPLR 3017 (subd [a]) requires that such "a demand for the relief to which the pleader deems himself entitled” be contained in a complaint. There is no statutory requirement that, where general damages are demanded, the amount to which the pleader deems himself entitled be specified. Nor is the case law unduly restrictive in this regard.
It has long been held that plaintiffs who have pleaded the wrong measure of damages, and therefore demanded an amount to which they were not entitled, could still recover the amount to which they were entitled under the correct measure of damages as long as facts from which some damages could be properly inferred had been alleged (Colrick v Swinburne, 105 NY 503, 507), but where special damages were claimed, and in wrongful death cases, some amount had to be specified. (Winter v American Aniline Prods., 236 NY 199, 204; Lurie v New Amsterdam Cas. Co., 270 NY 379, 382; Rampell, Inc. v Hyster Co., 3 NY2d 369, 383; Ketchum v Van Dusen, 11 App Div 332, 336; Williams v Conners, 53 App Div 599, 601; Leather Development Corp. v Dun & Bradstreet, 15 AD2d 761, affd 12 NY2d 909.) This, however, was not the case where general damages were demanded, as the Supreme Court, general Term, explained nearly a century ago: "In common-law actions, founded upon wrongful or negligent acts of defendants, the damages are the result or consequence of the cause of action out of or from which they arise; and, while they may be essential to recovery, they do not necessarily constitute any part of the cause of action [i.e., the negligent act] which produces them. And, therefore, when a complaint alleges such cause of action, from which damages may and presumptively do flow, the addition of the demand of judgment for a sum of money as the consequence of such cause of action is all that is necessarily required to sustain the pleading.” (Kenney v New York C & H RRR Co., 49 Hun 535, 537.) And, more recently, in Matter of Silvestris v Silvestris (24 AD2d 247, 250), the First Department has stated that "Under CPLR 3017 a complaint in an action must contain a demand *626 for relief. Such demand for relief need not demand a definite sum of money.”
If, however, an amount is specified in the demand, a plaintiffs recovery will be limited to the amount demanded (Curtiss v Lawrence, 17 Johns 111;* Michalowski v Ey, 7 NY2d 71, 75) and, unlike subdivision (c) of rule 54 of the Federal Rules of Civil Procedure, CPLR 3017 (subd [a]), which states that "the court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded”, has not changed that rule. (Garden Hill Estates v Bernstein, 24 AD2d 512, affd 17 NY2d 525.) Thus, in New York, the plaintiff who, in a Supreme Court action, demands a specific amount in general damages has limited the recovery he may obtain against the defendant, and, once having afforded the defendant that protection, he may not withdraw it without securing the court’s approval through a motion to amend.
In this case, because of the claim for lost earnings, plaintiff had to plead special damages, now estimated at $160,000, which figure obviously accounts for only part of the $750,000 increase plaintiff now seeks. The remainder, therefore, must be an increase in general damages. Had plaintiff at this point in the case sought to amend so as to eliminate the specification of the amount of general damages, and thus expose defendants to unlimited liability, it might indeed be prejudicial to grant the motion. However, in light of the nature of the injuries previously alleged and the continued erosion of the value of the dollar since the last amendment, it should come as no surprise to the defendants that plaintiff now seeks a further amendment. Nor is the sum sought unreasonable under the circumstances. It must be noted that plaintiff could have demanded one million, or even 20 million, dollars in his original complaint and defendants could not have prevented the jury from hearing the word "million”, which is not in itself prejudicial. Jurors are not so naive that they will automatically award plaintiff $1,000,000 merely because he asks for it, and those that are will presumably be weeded out by defendants in the selection process. Moreover, no purpose would be served by requiring the plaintiff to make an annual motion to amend whenever the longshoremen’s *627 minimum wage increased instead of doing so just once prior to trial.
Finally, as a matter of policy, the court has an obligation to protect clients from attorneys who undervalue their cases and are then faced with jury verdicts in excess of the amounts pleaded. It may be that the client could then recover the excess from the attorney in a malpractice action, but it is unfair to the client and the court to penalize both by putting them to the time and expense of trying an action which is wholly avoidable. The same is true of the motion to amend which is almost inevitably made on the eve of trial by trial counsel who is more experienced, and hence more realistic, in evaluating claims. This is not to say that defendants are not entitled to the protection provided by the Garden Hill rule if plaintiffs are inclined to grant it; but courts should be in the business of resolving disputes, not creating them by rules of pleading which at best are artificial. The wise practitioner who leaves open the amount of general damages will not only better serve his client, but will also further the ends of justice by allowing recovery to be based, as it is in Federal court, upon the damages proven at trial, and obviate the necessity for dilatory motions; and, in doing so, he will also discharge his duty as an officer of the court.
Having found that no prejudice would result to defendants in both actions by permitting the amendment, and mindful that leave to amend "shall be freely given” (CPLR 3025, subd [b]) the motion is granted.

 It might be noted that the basis for the decision in Curtiss, which established this rule, is Livingston v Rogers (1 Caines 583, 588) which did not decide this issue as the court, consisting of Justices Kent and Thompson, was divided on the question.